UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SAMUELS, )<br><br>               Plaintiff, )<br><br>      v. )<br><br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security )<br><br>           Defendant. )<br>——————————————— ) | No. CV 13-6393-AGR<br><br>MEMORANDUM OPINION AND ORDER |

William Samuels filed this action on September 11, 2013.  (Dkt. No. 3.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 10, 16.)  On April 4, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

I.

## PROCEDURAL BACKGROUND

On April 14, 2010, Plaintiff William Samuels filed an application for supplemental security income alleging an onset date of March 21, 2010.  Administrative Record ("AR") 22, 108-11.  The application was denied.  AR 22, 58.  Samuels requested a hearing before an Administrative Law Judge ("ALJ").  AR 76.  On February 28, 2012, the ALJ conducted a hearing at which Samuels and a vocational expert ("VE") testified.  AR 34-57.  On April 26, 2012, the ALJ issued a decision denying benefits.  AR 22-30.  On July 5, 2013, the Appeals Council denied the request for review.  AR 3-8.  This action followed.

II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

1

2

**III.**

**DISCUSSION**

3

**A.    Disability**

4

5

6

7

8

9

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

10

**B.    The ALJ's Findings**

11

12

13

14

15

16

17

18

19

20

21

22

23

Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Samuels has the severe impairments of hypertension and history of aortic aneurysm type B dissection.  AR 24.  His impairments do not meet or equal a listing.  AR 24-25. He has the residual functional capacity ("RFC") to perform light work, except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk or sit six hours in an eight hour day; climb ramps and stairs occasionally; and balance, stoop, kneel, crouch, and crawl occasionally.  AR 25.  He is precluded from climbing ladders, ropes or scaffolds.  He must avoid concentrated exposure to extreme cold, extreme heat, and hazards such as heights or dangerous machinery.  *Id.*  He has no past relevant work.  AR 28.  There are jobs that exist in significant numbers in the national economy that he can perform, such as nuts and bolts assembler, cut and cover line worker and basket filler.  AR 29.

24

25

26

27

28

[1]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsbury*, 468 F.3d at 1114.

### C.     **Development of the Record**

Samuels contends the ALJ failed to develop the record regarding his "potential mental health issues."

It is the claimant's duty to prove disability.  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (as amended); *see* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted).  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes*, 276 F.3d at 459-60.  This principle does not, however, allow a claimant to shift her own burden of proving disability to the ALJ.  *Id.* at 459.

Samuels argues that he presented a "colorable claim of mental illness, or possible intellectual disability."  JS 3.  Samuels testified that he went to school through the eighth grade and was in special education for about five to six years, every day.[2] AR 41, 48.  He testified that he "was not retarded."  AR 48.  He was told by a teacher that he had a temper and had hygiene problems.  *Id.*  Samuels contends that a colorable claim of mental impairment was supported by evidence that a 2010 altercation with someone exacerbated his blood pressure, resulting in a trip to the Emergency Room.[3]  Samuels argues that the ALJ should have ordered a consultative examination

---

[2]  In the Disability Report – Adult, Samuels stated that he completed seventh grade.  AR 128.

[3]  According to the record, Samuels went to the hospital in mid-2009 complaining of chest pains after getting into an argument.  AR 286.  He was told that his blood pressure was high.  *Id.*  He was given medications and told to follow-up.  *Id.*  He felt

to assess the impact, if any, of a mental impairment on work-related activities.  He further argues the ALJ should have assessed the need for a less stressful work environment and jobs without pace and output requirements.  JS 4.

The ALJ's duty to develop the record further was not triggered.  The ALJ found that the record lacked evidence or a claim of a medically determinable mental impairment.  AR 24.  The ALJ noted Samuels' testimony that he did not think he was good around people, but found that statement inconsistent with his goal of becoming a comedian and his testimony that he had the ability to make people laugh.  AR 24, 43, 45-46.  In the Disability Report – Adult, Samuels did not allege that a mental condition limited his ability to work and stated that he did not attend special education classes (in contrast to his testimony).  AR 127-28.  In a Disability Report – Appeal, Samuels reported that he had no new illness, injuries or conditions.  AR 138.  In a different Disability Report – Appeal, Samuels reported that he had the new limitations of headaches, seeing and no sleep as a result of his heart attack, but he had no new illnesses, injuries or conditions.  AR 143-44.

The objective evidence did not show that Samuels had a mental impairment.  The Centinela Hospital Records indicate treatment related to Samuels' hypertension and aortic dissection, and do not indicate any mental condition.  AR 169-228.  While Samuels was in the hospital for hypertension in January 2011, he underwent a clinical social work initial assessment by Ms. Squalls, CSW.  AR 266-68.  The mental status examination showed that Samuels made good eye contact and had fluency in speech.  AR 266.  His mood was euthymic and his affect was appropriate.  He was oriented to time, place, person and situation.  He was cooperative during the examination.  *Id.*  A depression screening showed that Samuels was not depressed.  He denied any suicidal or homicidal ideation, and denied any prior mental health history.  AR 266-67.  Samuels indicated he had a social support system.  AR 267-68.  During the same hospital stay, a

fine, so he did not follow-up.  *Id.*

1  separate mental status examination showed that Samuels was alert and oriented times
2  four and was cooperative.  AR 298.  Another mental status examination during the
3  same hospital stay showed that Samuels was "alert, oriented x 4, no acute distress,
4  smiling."  AR 276.  In the Discharge Summary, Samuels was told he could return to
5  work with only a limitation for heavy lifting.[4]  AR 273.

6        The ALJ did not find that the record was insufficient or inadequate to determine
7  disability.  Nor does the record establish ambiguity or inadequacy regarding a mental
8  impairment.  In addition, the ALJ did not err in not including restrictions in the RFC for a
9  less stressful work environment and jobs without pace and output requirements.[5]  The
10  ALJ did not err.

11       **D.   Credibility**

12       Samuels contends the ALJ erred in his credibility assessment.

13       "To determine whether a claimant's testimony regarding subjective pain or
14  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v.*
15  *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine
16  whether the claimant has presented objective medical evidence of an underlying
17  impairment 'which could reasonably be expected to produce the pain or other
18  symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)
19  (en banc)).  The ALJ found that Samuels' medically determinable impairments could
20  reasonably be expected to produce the alleged symptoms.  AR 25.

21

22

_____

23      [4] *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721 (9th Cir. 2011), is
distinguishable.  In *Keyser*, the claimant's treating physicians diagnosed her with bipolar
24  disorder and paranoid and schizotypal personality traits, and opined that those
25  conditions impacted her ability to work.  *Id.* at 726-27.  Here, Samuels did not receive a
diagnosis or treatment for any psychiatric condition, and his treating physician did not
26  opine that his mental conditions impacted his ability to work.

27      [5] Samuels' argument that mental disability was demonstrated by the incident of
28  elevated blood pressure due to an argument is unavailing.

6

1   "Second, if the claimant meets this first test, and there is no evidence of

2   malingering, the ALJ can reject the claimant's testimony about the severity of her

3   symptoms only by offering specific, clear and convincing reasons for doing so."

4   *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a

5   credibility determination, the ALJ 'must specifically identify what testimony is credible

6   and what testimony undermines the claimant's complaints[.]'"  *Greger v. Barnhart*, 464

7   F.3d 968, 972 (9th Cir. 2006) (citation omitted).

8       In weighing credibility, the ALJ may consider factors including:  the nature,

9   location, onset, duration, frequency, radiation, and intensity of any pain; precipitating

10  and aggravating factors (e.g., movement, activity, environmental conditions); type,

11  dosage, effectiveness, and adverse side effects of any pain medication; treatment,

12  other than medication, for relief of pain; functional restrictions; the claimant's daily

13  activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346

14  (citing Social Security Ruling ("SSR") 88-13)[6] (quotation marks omitted).  The ALJ may

15  consider:  (a) inconsistencies or discrepancies in a claimant's statements; (b)

16  inconsistencies between a claimant's statements and activities; (c) exaggerated

17  complaints; and (d) an unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278

18  F.3d 947, 958-59 (9th Cir. 2002).

19      Samuels testified that he has chest pain, headaches and fatigue.  AR 26, 45, 49-

20  50.  He testified that he stays to himself except when he performs as a comedian.  AR

21  24, 43-45.  He testified that he "don't lift nothing."  AR 49.

22      The ALJ found that Samuels' statements concerning the intensity, persistence

23  and limiting effects of his symptoms were not credible to the extent they were

24  inconsistent with the RFC.  AR 25.  The ALJ relied on five reasons:  (1) Samuels did not

25  _____

26      [6]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute
    Social Security Administration interpretations of the statute it administers and of its own
27  regulations," and are given deference "unless they are plainly erroneous or inconsistent
    with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

comply with treatment; (2) the objective evidence did not support the severity of the alleged symptoms; (3) Samuels' treatment was conservative; (4) Samuels' work history was limited; and (5) the objective medical evidence was inconsistent with Samuels' alleged symptoms.  AR 25-28.

Samuels argues that the ALJ's credibility analysis "centered on [the] refusal of vascular surgery."  JS 8.  Samuels contends the ALJ did not give him an opportunity to explain why he failed to follow treatment, did not contact the treating physician to clarify the treatment that he was told to follow, and did not notify him of the possibility of denial on this basis.

Contrary to Samuels' position, the evidence indicates that Samuels refused the recommended surgery and explained that he wanted only conservative medical treatment.  AR 269.  Samuels was admitted to LAC+USC Medical Center for six days in January 2011 for hypertension and previously diagnosed aortic tear.  AR 260.  Treatment notes indicate that Samuels "would be uncomfortable knowing there is a graft in him the rest of his life."  Dr. Herscu explained for more than fifteen minutes the risk of leaving without receiving the surgery, including the risk of death.  AR 26, 269.  Samuels still refused surgical intervention.  AR 26, 269.  At the hearing on February 28, 2012, Samuels testified that he was scared he would die if he had surgery.  AR 45-46.  Samuels explained that the doctor advised that if it burst, "I'm going to die right there.  And I'd rather have it that way."  AR 47.  In addition, although Samuels argues there is no indication he did not follow up with a vascular surgeon, the record indicates non-compliance with follow-up as of February 14, 2011.  AR 63.

The ALJ cited additional instances in which Samuels failed to follow prescribed treatment.  When Samuels was admitted to the hospital for aortic dissection in March 2010, he "signed out against medical advice prior to be[ing] discharged by the doctor."  AR 26, 173.  In December 2010, Samuels reported to Dr. Shamekh, a consultative examiner, that he had not been taking one of the two medications prescribed and did not follow up for his blood pressure or his aortic dissection, as recommended.  AR 26,

1 235, 240.  The ALJ could reasonably interpret the evidence as showing failure to follow
2 prescribed treatment.  Even assuming the ALJ erred in relying on Samuels' failure to
3 follow prescribed treatment, the ALJ provided numerous other valid reasons for
4 discounting Samuels' credibility and remand is not warranted here.[7]

5 　　　　Samuels' reliance on SSR 82-59 is misplaced.  SSR 82-59 applies only to an
6 "individual who would otherwise be found to be under a disability, but who fails without
7 justifiable cause to follow treatment prescribed by a treating source which the Social
8 Security Administration (SSA) determines can be expected to restore the individual's
9 ability to work[.]"  SSR 82-59, 1982 WL 31384 at *1.  The procedures outlined in SSR
10 82-59 "only apply to claimants who would otherwise be disabled within the meaning of
11 the Act" and when the Secretary bases the "denial of [ ] benefits solely on [the
12 claimant's] failure to follow prescribed treatment."  *Roberts v. Shalala*, 66 F.3d 179, 183
13 (9th Cir. 1995).  Here, Samuels would not otherwise be found to be under a disability,
14 and the ALJ specifically indicated that he did not deny benefits solely on the basis of
15 failure to follow prescribed treatment.  AR 27.  Thus, SSR 82-59 does not apply.

16 　　　　When, as here, "the ALJ's credibility finding is supported by substantial evidence
17 in the record, we may not engage in second-guessing."  *Thomas*, 278 F.3d at 959
18 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

19
20
21

22 　　[7] In *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2007), the
23 Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility
finding were invalid. When an ALJ provides specific reasons for discounting the
24 claimant's credibility, the question is whether the ALJ's decision remains legally valid,
despite such error, based on the ALJ's "remaining reasoning and *ultimate credibility*
25 *determination.*"  *Id.* at 1162 (emphasis in original). In light of the ALJ's valid reasons for
26 discounting Samuels' credibility, substantial evidence supports the ALJ's credibility
finding.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)
27 (any error was harmless even if record did not support one of four reasons for
28 discounting claimant's testimony).

**E.    RFC Determination**

Samuels contends the ALJ's RFC assessment did not adequately account for his cardiac impairment and pain.

The RFC determination measures the claimant's capacity to engage in basic work activities.  *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986).  The RFC is a determination of "the most [an individual] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a).  It is an administrative finding, not a medical opinion.  20 C.F.R. § 404.1527(e)(2).  The RFC takes into account both exertional limitations and non-exertional limitations.  The RFC must contain "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p.  The ALJ must also explain how he or she resolved material inconsistencies or ambiguities in the record.  *Id.*  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas*, 278 F.3d 947, 956-57 (citation omitted).

The ALJ's RFC determination was that Samuels can perform light work, except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk or sit six hours in an eight hour day; climb ramps and stairs occasionally; and balance, stoop, kneel, crouch, and crawl occasionally.  AR 25.  He is precluded from climbing ladders, ropes or scaffolds; and must avoid concentrated exposure to extreme cold, extreme heat, and hazards such as heights or dangerous machinery.  *Id.*

The ALJ properly considered Samuels' cardiac impairment.  Samuels argues that hospital records from a five-day hospital stay in January 2011 show that he was advised to get vascular surgery and his blood pressure was 186/124.  AR 272-73.  Although he was told he could return to work, he was advised against heavy lifting.  AR 272-73.

The RFC included exertional, postural and environmental limitations, including a limitation to lifting 20 pounds occasionally and 10 pounds frequently.  AR 25.  The ALJ noted that Samuel's cardiovascular problem was supported by diagnostic tests, but that

the symptoms from his hypertension were accommodated by the RFC.  AR 26, 239.
The ALJ adopted the RFC assessment of  the State Agency medical consultant, Dr.
Wilson, finding his opinion consistent with the treatment records.  AR 27, 244-48.  Dr.
Wilson opined that Samuels could occasionally lift and carry 20 pounds; frequently lift
and carry 10 pounds; and sit, stand and walk for six hours out of an eight-hour day.  AR
27, 245.  Samuels had occasional postural limitations and should avoid concentrated
exposure to extreme cold, extreme heat, and hazards.  AR 27, 247.  In addition, no
medical source opined that Samuels has limitations greater than the RFC due to his
cardiac impairment.  AR 28, 240, 272-73.

The ALJ properly considered the effects of Samuels' pain.  Samuels argues that
his headaches warranted a further diminished RFC determination.  The ALJ discussed
Samuels' headaches and determined that the prophylactic limitations in the RFC
accommodated Samuels' headaches[8] and occasional episodes of chest pain.  AR 28.
No medical source opined that Samuels has limitations greater than the RFC due to the
effects of his pain.  AR 28, 240, 272-73.

Samuels argues that the ALJ disregarded the responses from the VE to
hypothetical questions set forth by his attorney.  An ALJ may rely on a VE's testimony
given in response to a hypothetical question that contains all of the limitations the ALJ
found credible and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d
1211, 1217-18 (9th Cir. 2005).  The ALJ was not required to rely on responses from the
VE to hypotheticals that included other limitations.  *See Rollins v. Massanari*, 261 F.3d
853, 858 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found
to exist, and because his findings were supported by substantial evidence, the ALJ did
not err in omitting the other limitations that [the plaintiff] had claimed, but had failed to
prove."); AR 29, 51-54.  The VE testified that a person with Samuels' RFC could
perform jobs such as nuts and bolts assembler, cut and cover line worker, and basket

---

[8]  Samuels testified that he takes Aleve for headaches.  AR 50.

filler. AR 29, 53. The ALJ was entitled to rely on the VE's testimony. *See Bayliss*, 427 F.3d at 1217-18.

Samuels also argues that the ALJ erroneously relied on the findings of Dr. Shamekh, a consultative examiner, who did not review his most recent records from 2011. Dr. Shamekh found that Samuels could lift and carry 50 pounds occasionally and 25 pounds frequently. AR 27, 240. Samuels was "highly recommended to avoid any work at heights or climb ladders until the blood pressure is better controlled." AR 27, 240. As the Commissioner notes, the records from January 2011 document Samuels' ability to return to work despite his complaints of headaches. AR 273. These records did not preclude Dr. Shamekh from properly evaluating Samuels' functionality. At any rate, the ALJ assigned "little weight" to the functional assessment of Dr. Shamekh on the ground that the treatment records show greater limitation. AR 27.

The ALJ did not err in the RFC determination.

## F. Listing 4.10

Samuels contends the ALJ erred by not considering Listing 4.10, aneurysm of aorta.

At step three of the sequential analysis, the claimant bears the burden of demonstrating that his impairments are equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). "For a

claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (citation omitted; emphasis in original).  "'Medical equivalence must be based on medical findings.'  A generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526).  "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

> To meet or equal Listing 4.10, the following must be present:
> Aneurysm of aorta or major branches, due to any cause (e.g., atherosclerosis, cystic medial necrosis, Marfan syndrome, trauma), demonstrated by appropriate medically acceptable imaging, with dissection not controlled by prescribed treatment (see 4.00H6).

20 C.F.R. Pt. 404, Subpart P, App. 1, § 4.10.

> Section 4.00H6 reads:
> When does an aneurysm have "dissection not controlled by prescribed treatment," as required under 4.10?  An aneurysm (or bulge in the aorta or one of its major branches) is dissecting when the inner lining of the artery begins to separate from the arterial wall.  We consider the dissection not controlled when you have persistence of chest pain due to progression of the dissection, an increase in the size of the aneurysm, or compression of one or more branches of the aorta supplying the heart, kidneys, brain, or other organs.  An aneurysm with dissection can cause heart failure, renal

(kidney) failure, or neurological complications.  If you have an aneurysm
that does not meet the requirements of 4.10 and you have one or more of
these associated conditions, we will evaluate the condition(s) using the
appropriate listing.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 4.00H6.

Samuels argues that he "may meet or equal this listing because, despite
intervention in 2010, he was hospitalized again in 2011 . . . [and] continued to suffer
from chest pain and related symptoms."  JS 18.  He contends that Listing 4.10 "was not
mentioned, discussed, or considered by the ALJ."  *Id.*

The ALJ gave particular consideration to Samuels' physical impairments under
Section 4.00, cardiovascular system.  AR 25.  Listing 4.10 and section 4.00H6 are
included in Section 4.00.  The ALJ acknowledged that Samuels has a history of
hypertension and chest pain that resulted in an aortic dissection.  AR 25, 169-228, 239.
He found that the medical evidence did not show listing-level severity, and no
acceptable medical source found that he met or equaled a listing.  AR 25.

Samuels does not demonstrate that he meets or equals Listing 4.10.  Ongoing
chest pains and related symptoms do not, on their own, satisfy Listing 4.10.  20 C.F.R.
Pt. 404, Subpart P, App. 1, § 4.00H6.  The chest pains must be due to progression of
the dissection.  *Id.*  The record evidence does not show chest pains due to progression
of the dissection.  Further, the record evidence does not show that the aneurysm
increased in size or that compression of one or more branches of the aorta occurred.
The medical record as a whole does not demonstrate that Samuels meets or equals
Listing 4.10.  The ALJ did not err.

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED:  July 3, 2014

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

15